JOHN F. CLYDE, PLAINTIFF, v. CHARLES PARILLO, DEFENDANT.

Decided May 7, 1947.

Before CASE, CHIEF JUSTICE, sitting as a single justice pursuant to the statute.

For the motion, *Sanford Silverman.*

*Contra, Meehan Brothers.*

Case, Chief Justice. The defendant moves against the order for bail which was made by a Supreme Court Commissioner. The facts covered in the affidavit as supporting the order for bail are that the assailant, who was one of the proprietors of the tavern where the assault occurred, with his bare fists broke the affiant's jaw and destroyed his teeth and that the affiant "was confined to the hospital for six days, where his jaw was wired and the same remained wired for a period of six weeks," and that this was done "without provocation and with malice." The inference is that the break was satisfactorily mended. It was conceded at the oral argument that the destruction of teeth referred to the breaking of the affiant's false plate, which act is clearly not within the statute as a ground for holding to bail.

The statute on the issuing of a *capias ad respondendum* in tort actions is *R. S.* 2:27–70; *N. J. S. A.* 2:27–70, and provides as follows:

"A *capias ad respondendum* shall issue in an action founded upon a tort only when (a) the action is founded upon a seduction, an outrageous battery or a mayhem, or is for the recovery of damages for the misconduct or neglect of a public officer, or (b) the proof establishes special cause as heretofore for holding defendant to bail; and, in such cases, only upon proof, by affidavit or otherwise, to the satisfaction of the court in which the action is about to be commenced or to a judge or a supreme court commissioner of the grounds upon which bail is required."

The statute on mayhem is *R. S.* 2:151–1; *N. J. S. A.* 2:151–1, which provides:

"Any person who, from premeditated design, evinced by lying in wait for the purpose, or in any other manner, or with intent to kill, maim or disfigure, shall cut out and disable the tongue, put out an eye, cut off or slit a lip, cut off, slit or destroy a nose or ear, or cut off or disable any limb or member of another, willfully and on purpose, shall be guilty of a high misdemeanor."

Properly, by the old English common law, mayhem consisted of violently depriving another of the use of such of his members as might render him the less able in fighting either

to defend himself or to annoy his adversary. 4 *Black. Com.* 205. Later, by statute, the offense was extended to include certain disfigurements. Our statute on mayhem goes back in much the present language at least as far as 22 and 23 *Car. II, ch.* 1, called the Coventry Act (3 *Statutes at Large* 350; *Cf.* 4 *Black. Com.* 207); and the seriousness of the offense as there conceived is apparent from the penalty which was "death as in cases of felony without benefit of clergy." The statute was, according to its recitals, provoked by the "violent and inhuman attempt made upon the person of Sir John Coventry * * * being a member of the Commons House of Parliament and then attending the Parliament * * * by a considerable number of armed men, both on foot and horseback whereby * * * the said Sir John Coventry received divers wounds, some of which were given in such barbarous manner that some of the offenders held him while others wounded him;" a part of the assault of the battery being a slitting of the victim's nose. A constituent part of the statutory offense was that it was done "on purpose and of malice aforethought, and by lying in wait."

Our cases, some of which are cited below, are to the effect that the grounds must appear by affidavit, which should consist of competent and legal evidence amounting to proof and should not be the conclusions of the affiant; that the phrase "outrageous battery" is used in conjunction with the word "mayhem" and calls for the application of the maxim *noscitur a sociis;* that therefore the act or acts complained of must be akin to mayhem and must be malicious. The following acts have been held not to justify the issuing of a *capias:* striking a woman over the eye with the right hand on which was worn a diamond ring, kicking her in the ribs and stomach, causing her to bleed profusely from the mouth and pulling her hair; brutally and repeatedly striking a woman in the face with clinched fists, pushing her down across a day bed, choking her, breaking her eye-glasses, cutting and bruising her cheek, bruising and injuring her shoulder, arm, back; grabbing a woman and with force and violence attempting to kiss her, squeeze her, pat her cheek, pinch her breasts; breaking a man's collarbone and causing severe contusions to his

head, back, chest, legs and other parts of his body and severe nervous shock. *Gardner* v. *Marcocci,* 43 *N. J. L. J.* 338; *Haglich* v. *Ceverlere,* 105 *N. J. L.* 521; 146 *Atl. Rep.* 591; *Hand* v. *Nolan,* 1 *N. J. Mis. R.* 428; 136 *Atl. Rep.* 430; *Jacobs* v. *Costanza,* 136 *Atl. Rep.* 807 (not officially reported); *Stumbfl* v. *Datton,* 11 *N. J. Mis. R.* 331; 165 *Atl. Rep.* 723; *Vitalano* v. *Roffo,* 3 *N. J. Mis. R.* 1130; 130 *Atl. Rep.* 815; *Hufly* v. *Wilson,* 78 *N. J. L.* 241; 74 *Atl. Rep.* 137; *Siris* v. *Bialy,* 5 *N. J. Mis. R.* 345; 136 *Atl. Rep.* 431.

The affidavits are conspicuously lacking in the details of the occurrence. The averment that the attack was "without provocation and with malice" standing alone is simply a conclusion by the affiant. No facts are stated from which a judicial officer may base a finding of malice or premeditated design. An attack with bare hands does not *per se* denote preparation, and the fact that the alleged assailant was one of the proprietors of the tavern where the affair occurred suggests, although, of course, it carries no inference, that perhaps there was occasion for the incident. A restored jawbone does not weaken a man for combat and does not affect his comeliness; at least neither of these results is manifested in this case.

Measuring the proofs against our statutes and our cases in the light of the historical background, I conclude that the acts relied upon to support the arrest must be malicious (*Haglich* v. *Ceverlere, supra*) and that since malice is an element in the offense such facts must be averred as will support a finding of malice. I am not satisfied with the proofs either in that respect or in respect of the outrageous character of the battery itself.

The order to hold to bail will be quashed and the bail discharged.